## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW MEXICO

**COWBOYS FOR TRUMP, INC**,
**KARYN K GRIFFIN**, former LLC
member of Cowboys for Trump and
in her individual capacity, **COUY
GRIFFIN** as an LLC Member
and in his individual capacity,

       Plaintiffs,

v.                                                                                                  Case No.

**MAGGIE TOLOUSE OLIVER,** in
her official capacity as Secretary of
State of New Mexico,

       Defendant.

### COMPLAINT FOR CIVIL RIGHTS VIOLATIONS SEEKING DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, by and through the undersigned counsel, THE BARNETT LAW FIRM, P.A. (Colin L. Hunter and Jordy Stern), hereby submits:

### INTRODUCTION

1.  This is a civil rights action seeking declaratory and injunctive relief to vindicate right of freedom of speech and association to organize and vocally support the President of the United States, Donald J. Trump and, his agenda as well as the right to enjoy the equal protection of law.

2.  The First Amendment elevates political speech above all other forms of individual expression by prohibiting laws that regulate it unless the laws are narrowly tailored to serve a compelling state interest.

3. As Justice Kennedy succinctly states in his majority opinion in Citizens United, discriminatory political speech prohibitions run afoul of the First Amendment because:

> Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people. . . The right of citizens to inquire, to hear, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it. The First Amendment "has its fullest and most urgent application" to speech uttered during a campaign for political office." (Internal citations omitted). For these reasons, political speech must prevail against laws that would suppress it whether by design or inadvertence.

*Citizens United* at 339.

4. Stretching back to the founding era and The Federalist Papers, the freedom of speech has included the right to engage in anonymous issue advocacy concerning important public issues. *McIntyre v. Ohio Election Commission*, 514 U.S. 334 (1995).

5. Similarly, the freedom of association includes the right of private individuals to band together for common purposes without government prying into those associations' membership or donor lists. *NAACP v. Alabama ex rel. Patterson, 357 U.S. 449 (1958).*

6. A core insight of the founding era was the necessity of separated powers, wherein each branch of government respected its appropriate role. The founders of the State of New Mexico incorporated this principle into their state constitution. *State ex rel. Taylor v. Johnson,* 1998-NMSC-015 (interpreting N.M. Const. art. III, § 1).

7. Defendant, Secretary of State Maggie Toulouse Oliver, is responsible for implementing New Mexico's campaign finance regime, including New Mexico Admin. Code 1.10.13 ("the Rule") and 2019 Senate Bill 3 ("the Bill"). The Rule and the Bill both require groups that engage in issue advocacy at times proximate to an election to register with Oliver's

agency, disclose their members and contributors, and place a sponsorship disclaimer on their materials.

8. Plaintiffs engage in educational advocacy in New Mexico and around the country in support of President Donald J. Trump and his policies. Plaintiffs have not and will not make independent expenditures in support of candidates or ballot questions and they also have not and will not make financial contributions to candidates. Further, Cowboys for Trump's focus is on educating the public about the President of the United States and his policies. They have not and will not make financial contributions or independent expenditures in support of candidates for state, local, and city elections in the state in New Mexico. Thus, if Plaintiffs were to engage in their planned issue advocacy, they would be required to register, disclose their donors, and place sponsorship disclaimers on their materials.

9. In order to protect the privacy of and on behalf of themselves and their donors, Plaintiffs bring this suit under 42 U.S.C. § 1983, seeking declaratory and injunctive relief to protect the core First Amendment rights to free speech and association.

10. In 2019, the Secretary of State made a final determination that Cowboys for Trump, LLC qualifies as a political committee under New Mexico's Campaign Reporting Act.

11. This despite Tenth Circuit case law being clear on this point. The SOS cannot constitutionally regulate organizations such as Cowboys for Trump. In *New Mexico Youth Organized v. Herrera*, Judge Henry writing for a unanimous panel found that:

> The district court ruled that Secretary Herrera's attempt to regulate these two organizations was unconstitutional. In assessing the constitutionality of the attempted regulation we apply principles from *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam), and its progeny, especially *Colorado Right to Life Committee, Inc. v. Coffman* ("CRLC"), 498 F.3d 1137 (10th Cir. 2007). Because we agree with the district court that the Secretary of State cannot constitutionally

regulate the organizations, we affirm the district court's grant of summary judgment.

*New Mexico Youth Organized v. Herrera*, 611 F. 3d 669 (10 Cir. 2010)

12. The Court further opined that ". . . organizations could not be constitutionally said to have a primary purpose of influencing elections -- as measured by either a comprehensive examination of their activities or by their satisfaction of the $500 threshold -- such that they could be subject to the full range of disclosure and report provision." *Id.* at ¶ 669

13. Plaintiffs are the same boat as the Plaintiffs in *New Mexico Youth Organized v. Herrera*, their primary purpose in not to influence elections, much less state elections over which the SOS has some authority. The SOS has never alleged that that Cowboys for Trump has attempted to influence state elections through independent expenditures or any by other means. This indisputable fact is key, Cowboys for Trump has not expended a single penny on independent expenditures in support of or in opposition to any candidate for office, much less a state office.

## JURISDICTION AND VENUE

14. Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988 to vindicate rights violated under color of state law, and seek relief under 28 U.S.C.§§ 2201 and 2202, and 42 U.S.C. § 1988. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). Venue properly lies with this Court under 28 U.S.C, § 1391(b).

## **PARTIES**

15. Plaintiff Cowboys for Trump has accepted contributions from supporters to educate the public in support of President Trump's agenda and Cowboys for Trump had planned to continue doing so for the duration of President Trump's time in office.

16. Plaintiff Karen K Griffin is a resident of the state of Colorado, a former member of Cowboys for Trump, LLC.

17. Plaintiff Couy Griffin is a resident of Otero County, is a member of the Otero County Commission, and the founding member of Cowboys for Trump

18. Maggie Toulouse Oliver is Secretary of State of New Mexico. She works in Santa Fe, Santa Fe County, New Mexico. She is sued in her official capacity.

## FACTUAL ALLEGATIONS

19. In March 2017, the New Mexico State Legislature adopted 2017 Senate Bill 96 (SB 96), which would have amended New Mexico's campaign finance statutes to, among other things, require reporting of independent expenditures. Secretary Toulouse Oliver enthusiastically supported SB 96, but Governor Susana Martinez vetoed the bill on April 7, 2017. S. Exec. Mess. No. 56 (Apr. 7, 2017). The Governor was concerned that "[t]he requirements in this bill would likely discourage charities and other groups that are primarily non-political from advocating for their cause and could also discourage individuals from giving to charities." *Id.*

20. That same day, Secretary Toulouse Oliver declared her office's policy priority: "Campaign finance reform and transparency continue to be a top priority for me and my office." Press Release, Sec. of State, Secretary Disappointed by Vetoes (Apr. 7, 2017) (emphasis added). The Secretary drew one conclusion from the Governor's SB96 veto: "I'm left with no other choice then to go forward utilizing my rulemaking authority to address many of these much-needed reforms before the next statewide election." *Id*.

21. The Secretary ultimately adopted the Rule on September 8, 2017, as 1.10.13 NMAC (10/10/2017). Sec. of State, Notice of Adoption Campaign Finance R. (Sept. 8, 2017).

She acknowledged that the "rule contain[ed] some features of Senate Bill 96, which passed both chambers of the New Mexico state legislature … but was vetoed by Governor Susana Martinez." Press Release, Sec. of State, Final Campaign Finance Rule (Sept. 8, 2017). The Rule marked a substantial evolution beyond the text of New Mexico's existing campaign finance statutes.

22. The Rule expanded the definition of "independent expenditure" to include any advertisement which "refers to a clearly identified candidate or ballot measure and is published and disseminated to the relevant electorate in New Mexico within 30 days before the primary election or 60 days before the general election in which the candidate or ballot measure is on the ballot." 1.10.13.7(Q)(3)(c) NMAC. This has the practical effect of automatically categorizing all issue advocacy referring to candidates, including incumbents seeking reelection, or ballot measures as an electioneering activity as long as it is done proximate in time to an election.

23. The Rule requires disclosure of all donors of $5,000 or more in the previous twelve months to an organization's general fund if the organization uses the general fund to spend at least $3,000 on a non-statewide race or ballot measure and $7,500 on a statewide race or ballot measure. 1.10.13.11(D)(2) NMAC. Failure of an organization sponsoring such independent expenditures to register and report can result in fines of $50 per day up to $5,000. 1.10.13.15(E) NMAC.

24. In March 2019, the New Mexico State Legislature adopted and the governor signed into law 2019 Senate Bill 3 (the Bill), an act related to campaign finance. In relevant part, the Bill significantly expanded the definition of "independent expenditure" under New Mexico state law to include any advertisement or other communication that "refers to a clearly identified candidate or ballot question and is published and disseminated to the relevant electorate in New Mexico within thirty days before the primary election or sixty days before the general election at

which the candidate or ballot question is on the ballot." N.M. Stat. Ann. § 1-19-26 (N)(3)(c). Like the Rule's new definition, this has the practical effect of automatically categorizing all issue advocacy referring to candidates, including incumbents seeking reelection, or ballot measures as an electioneering activity as long as it is done proximate in time to an election.

25. The Bill became effective July 1, 2019. 2019 Senate Bill 3, Section 18.

26. Because of the Bill, Plaintiffs and all other groups that engage in issue advocacy valued above certain thresholds are now required to register with Oliver as political committees. N.M. Stat. Ann. § 1-19-26.1(C).

27. Because of the Bill, Plaintiffs and similar groups will be required to disclose their members and contributors to Oliver. In the case of smaller expenditures, i.e., those worth under $3,000 in a nonstatewide election or under $9,000 in a statewide election, committees must disclose the name, address, and amount given of any person who has made contributions over $200 in the election cycle that were earmarked for or in response to a solicitation to fund independent expenditures. N.M. Stat. Ann. § 1-19-27.3(C).

28. In the case of larger expenditures, worth more than $3,000 (non statewide) or $9,000 (statewide), where those expenditures are funded by the committee's general fund, the committee must also disclose the name, address, and amount given of donors of over $5,000 during the election cycle to the organization's general fund. N.M. Stat. Ann. § 1-19-27.3(D)(2).

29. Oliver posts the independent expenditure reports filed by committees on her agency's website, https://portal.sos.state.nm.us/IESearch/, so that anyone will be able to see donors' information.

30. The new definition of independent expenditure also means that when Plaintiffs engage in issue advocacy close in time to an election, they must include a sponsorship disclaimer identifying their sponsorship of the advertisement. N.M. Stat. Ann. § 1-19-26.4.

31. Plaintiffs engage in issue advocacy on issues that relate to their mission promoting the causes of secure borders, the unborn's protection from abortion, and the Second Amendment. They feel strongly that issue advocacy is a protected right under the First Amendment.

32. C4T receives support from a variety of sources, including from donors of more than $5,000 per year. C4T raises money from New Mexico donors to support its mission.

33. At other times each raises general funds to support their general operations, and then the general fund pays for their educational efforts.

34. Plaintiffs are concerned that compelled disclosure of their donors could lead to substantial personal and economic repercussions for their supporters. Across the country, individual and corporate donors to political candidates and issue causes are being subject to boycotts, harassment, protests, career damage, and even death threats for publicly engaging in the public square. Plaintiffs fear that their donors may also encounter similar reprisals from activists if their donations are made public. Oliver's posting of all donor information on the Internet makes this fear of harassment and retaliation all the more real, as it exposes national or multinational donors to harassment from anywhere in the world.

35. Plaintiffs are also concerned that if their donors are disclosed, their membership and revenue will decline as donors prioritize their anonymity over supporting Plaintiffs' work.

36. If Plaintiffs engage in this issue advocacy but fail to register, file the required reports, or include the required disclaimers, their officers will be subject to punishment as a

misdemeanor with a $1,000 fine or one year in jail or both. N.M. Stat. Ann. § 1-19-36. Cowboys for Trump, a corporate entity, may also be subject to civil penalties of $1,000 for each violation not to exceed a total of $20,000. N.M. Stat. Ann. § 1-19-34.6(B). They may also be subject to fines up to $5,000 from the Secretary of State's office. 1.10.13.15(E) NMAC. Plaintiffs therefore bring this pre-enforcement challenge on behalf of themselves and their donors to vindicate their First Amendment rights. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) (setting the standard for pre-enforcement challenges). Plaintiffs intend to engage in a course of conduct affected with constitutional interest (namely its issue advocacy).

37. Because of these potential harms, Plaintiffs will be forced to silence their own speech and not engage in their desired communications so long as these provisions of the Bill are in force.

38. Plaintiffs have no remedy at law.

## Count I

### By requiring Plaintiffs to disclose their members and supporters, Oliver violates the First and Fourteenth Amendments.

39. The allegations contained in all preceding paragraphs are incorporated herein by reference.

40. Plaintiffs and their donors enjoy a right to privacy in their association for free speech about issues. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958); *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539 (1963). This right to privacy in association for free speech is protected by the First Amendment as incorporated against the states. *Id*. The Rule and the Bill violate that right by requiring disclosure of donations, ending the privacy of the speech-oriented association.

41. The Rule and the Bill cannot meet the required level of scrutiny. The U.S. Supreme Court has only found a compelling interest in membership-disclosure regulations when the association was engaged in or advocating for illegal activity. *Familias Unidas v. Briscoe*, 619 F.2d 391, 401 (5th Cir. 1980) ("The disclosure requirements in [*Communist Party v. Subversive Activities Control Board*, 367 U.S. 1 (1961)] and [*New York ex rel. Bryant v. Zimmerman*, 278 U.S. 63 (1928)] attached only to organizations either having a demonstrated track record of illicit conduct or explicitly embracing, as doctrine, plainly unlawful means and ends."). Plaintiffs have no track record of illicit conduct nor have they embraced plainly unlawful means and ends; C4T engages in issue advocacy for the policies of President Trump. The government lacks a compelling interest in forcing them to disclose their members and supporters.

42. Plaintiffs and their members and supporters are entitled to an injunction under 42 U.S.C. § 1983 enjoining the continued enforcement of N.M. Stat. Ann. §§ 1-19-27.3(C) and (D)(2) and 1.10.13.11 NMAC as applied to Plaintiffs and other organizations engaged in issue advocacy.

## Count II

**By requiring Plaintiffs to register and disclose their sponsorship of issue advocacy, Oliver violates the First and Fourteenth Amendments.**

43. The allegations contained in all preceding paragraphs are incorporated herein by reference.

44. Plaintiffs enjoy a right to anonymity in its free speech about issues, a right protected by the First Amendment as incorporated against the states. *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150 (2002); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995); *Talley v. California*, 362 U.S. 60 (1960). The Rule and the Bill violate that

right by requiring Plaintiffs to first register with Oliver before engaging in issue speech and to put a disclaimer announcing their sponsorship on all of their issue-advocacy.

45. The Rule and the Bill affect direct issue speech, not express advocacy concerning candidates or ballot measures. *See Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 836-37 (7th Cir. 2014) (government does not have "a green light to impose political-committee status on every person or group that makes a communication about a political issue that also refers to a candidate.").

46. Plaintiffs are entitled to an injunction under 42 U.S.C. § 1983 enjoining the continued enforcement of N.M. Stat. Ann. § 1-19-26.1(C) (registration) and § 1-19-26.4 (disclaimer) and 1.10.13.11 NMAC as applied to Plaintiffs and other persons or organizations engaged solely in educational activities.

## Count III

### The Rule is ultra vires because Oliver acted beyond her constitutional authority to promulgate it.

47. The allegations contained in all preceding paragraphs are incorporated herein by reference.

48. The Rule violates Article III, Section 1 of the New Mexico Constitution by disrupting the proper balance between legislative and executive branches in two principal ways, either one of which would suffice to entitle the Petitioners to relief. First, the Rule arrogated the Legislature's exclusive Article IV prerogatives to establish public policy and to make law. Second, the Rule nullified the Governor's exclusive Article IV, Section 22 prerogative of veto and preempted the Legislature's exclusive Article IV, Section 22 prerogative of veto override.

To date the Secretary has never issued rules pursuant to the authority purportedly advanced by the legislature under the Bill. 45.

49. Thus, the Rule continues to violate the New Mexico Constitution subsequent to the Bill's passage and that Rule must be struck as ultra vires.

50. The Secretary of State may not enact her policy preferences into law. Administrative agency policymaking violates the separation of powers when an executive department agency assumes the authority to modify existing law or to create new law. *See State ex rel. Sandel*, 1999-NMSC-019. The Secretary arrogated legislative prerogatives unto her executive department office by unconstitutionally amending the fundamental standards and vital policy choices of New Mexico's then-extant campaign finance act.

51. The Supreme Court of New Mexico in the seminal case of *State ex rel. Taylor v. Johnson,* 1998-NMSC-015, prohibited the type of assertion of authority the Rule attempts. It affirmed the application of these principles to the *Secretary of State in Unite N.M. v. Oliver*, 2019-NMSC-009.

52. The Rule reflects Oliver's attempt to circumvent the lawmaking process, the governor's veto, and constitutional requirements of bicameralism and presentment. It ignores the fundamental limits of Oliver's role, which only includes the authority to promulgate rules implementing statutes, not to make major policy decisions out of whole cloth and threaten fines on anyone who fails to comply with her policy preferences.

53. The passage of the Bill does not cure the infirmities with the Rule. As the Bill is unconstitutional as earlier alleged, it cannot support these rules. The Secretary did not and could not rely on a future piece of legislation that came after her usurpation of the legislative function.

She has not issued new regulations in accord with the Bill and those regulations in the Rule hang in air unsupported by statutory or constitutional scaffolding.

54. Acts that offend the New Mexico Constitution are void ab initio. It is important to specifically analyze and enjoin the Rule separate from the Bill, as the Rule in some instances sets lower thresholds for reporting and disclosure than the Bill.

## Count IV

**Plaintiffs are entitled to a declaratory judgment that New Mexico's Campaign Act, as applied to Plaintiffs, is preempted by the Federal Campaign Reporting Act**

55. Federal law preempts state law with respect to election to federal office. 52 U.S.C. § 30143(a).

56. Federal law supersedes "state law concerning the (1) organization and registration of political committees supporting Federal candidate; (2) disclosure of receipts and expenditures by Federal candidates and political committees; and (3) limitation on contributions and expenditures regarding Federal candidates and political committees." 11 CFR § 108.7(b)(1-3).

57. Plaintiff seeks a declaratory judgment under 28 U.S. Code § 2201 that (i) 1978 NMSA § 1-19-26.1(E) is preempted by federal law; and (ii) the Campaign Reporting Act is further preempted by the Federal Election Campaign Act to the extent the Campaign Reporting Act requires associations of people to register with or disclose receipts and expenditures to the New Mexico Secretary of State.

## PRAYER FOR RELIEF

Plaintiffs respectfully requests that this Court:

(a) Declare that the independent expenditure provisions of 2019 Senate Bill 3 and 1.10.13 NMAC as applied to issue advocacy such as Plaintiffs' compel member and supporter

disclosure in violation the right to freedom of speech and association under the First and Fourteenth Amendments;

(b) Declare that the independent expenditure provisions of 2019 Senate Bill 3 and 1.10.13 NMAC as applied to issue advocacy such as Plaintiffs' compel sponsor registration and disclaimer in violation of the right to anonymous speech under the First and Fourteenth Amendments;

(c) Declare that New Mexico's Campaign Reporting Act is preempted by federal law to the extent that the Campaign Reporting Act requires registration of associations of people who support candidates for federal office;

(d) Enjoin the application of the independent expenditure provisions of 2019 Senate Bill 3 and 1.10.13.11 NMAC as applied to organizations engaged educational advocacy such as Plaintiffs'; and

(e) Vacate 1.10.13 NMAC (10/10/2017), as unconstitutional pursuant to Article III, Section 1 of the New Mexico Constitution; and

(f) Award the Plaintiffs' nominal damages

(g) Award Plaintiffs their costs and attorneys' fees under 42 U.S.C. § 1988; and

(h) Award any further relief to which Plaintiffs may be entitled.

Dated: June 18, 2020

Respectfully submitted,

BARNETT LAW FIRM, P.A.

*By: s/s Colin Hunter*
COLIN L. HUNTER
1905 Wyoming Blvd NE
Albuquerque, NM 87112
(505) 275-3200
colin@theblf.com

-and-

*By: s/s Jordy Stern*
JORDY STERN
905 Wyoming Blvd NE
Albuquerque, NM 87112
(505) 275-3200
jordy@theblf.com