UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

COWBOYS FOR TRUMP, INC., et al.,

    Plaintiffs,

v.                                                           Civ. No. 20-587 GJF/SMV

MAGGIE TOULOUSE OLIVER, *in
her official capacity as Secretary of State
of New Mexico*,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Defendant Maggie Toulouse Oliver's (in her official capacity as the Secretary of State of New Mexico) "Motion for Judgment on the Pleadings" [ECF 14] ("Motion"). The Motion is fully briefed. ECF 23 (response); ECF 25 (reply). For the following reasons, the Court will **GRANT IN PART AND DENY IN PART AS MOOT** Defendant's Motion and **DISMISS THE COMPLAINT WITHOUT PREJUDICE WITH LEAVE TO AMEND**.

**I.    BACKGROUND**[1]

Plaintiffs Cowboys for Trump, LLC ("C4T"),[2] Couy Griffin, and Karyn Griffin[3] "engage in educational advocacy in New Mexico and around the country in support" of President Donald

---

[1] The following facts are taken directly from Plaintiffs' "Complaint for Civil Rights Violations Seeking Declaratory and Injunctive Relief" [ECF 1]. For the purposes of this Motion, the Court accepts all of the Complaint's factual allegations as true.

[2] The record reflects that the caption erroneously identifies C4T as a corporation instead of correctly reflecting that it is a limited liability company. *See, e.g.*, ECF 15 at 1 ("Plaintiff[s] intend[] to file: [a] motion to correct the case caption to remove 'Inc.'").

[3] The Court notes that the Complaint spells Karyn's name two different ways but will employ the spelling used in the caption. *See, e.g.*, ECF 1 ¶ 16 ("Plaintiff *Karen* K Griffin is a resident of the State of Colorado, [sic] a former member of Cowboys for Trump, LLC.") (emphasis added).

J. Trump and his policies. ECF 1 ¶ 8. In doing so, Plaintiffs promote "the causes of secure borders, the unborn's protection from abortion, and the Second Amendment." *Id.* ¶ 31. To conduct its mission, C4T accepts contributions from supporters and plans "to continue doing so for the duration of President Trump's time in office." *Id.* ¶ 15. Plaintiff Karyn Griffin is a former C4T member, *id.* ¶ 16, while Plaintiff Couy Griffin is an Otero County Commissioner and C4T's founder. *Id.* ¶ 17. In their Complaint, Plaintiffs challenge certain reporting, disclosure, and disclaimer provisions of the New Mexico Campaign Reporting Act ("CRA"). *See generally* N.M. Stat. §§ 1-19-26, 1-19-26.1, 1-19-26.4, 1-19-27.3, 1-19-34.4, 1-19-34.6, 1-19-36.[4]

Under the CRA, C4T (as a "political committee")[5] is required to register a "statement of organization" with Defendant. ECF 1 ¶ 26; N.M. Stat. § 1-19-26.1(B)-(C). That requirement obligates C4T to identify to Defendant its name, a statement of purpose for which it was organized, the names and addresses of its officers, and the bank account used to "receive or make contributions or make expenditures." N.M. Stat. § 1-19-26.1(C)(1)-(4).

At the heart of the dispute are the disclosure requirements triggered by certain threshold amounts of "independent expenditures." The New Mexico Legislature defined an "independent expenditure" as one that is:

(1) made by a person other than a candidate or campaign committee;

---

[4] In their Response, Plaintiffs voluntarily dismissed "Count I." ECF 23 at 1. Based on the arguments the Plaintiffs made therein, however, the Court assumes that Plaintiffs intended instead to drop Count III. *See id.* at 2–7. Accordingly, the Court does not discuss and expresses no opinion as to Plaintiff's allegations regarding Defendant's promulgation of 1.10.13 *et seq.* NMAC. *See, e.g.*, ECF 1 ¶¶ 19–23.

[5] The term "political committee" includes (1) political parties; (2) legislative caucus committees; (3) associations consisting of "two or more persons whose primary purpose is to make contributions to candidates, campaign committees or political committees or make coordinate expenditures or any combination thereof;" and (4) associations consisting of "two or more persons whose primary purpose is to make independent expenditures and that has received more than five thousand dollars ($5,000) in contributions or made independent expenditures of more than five thousand dollars ($5,000) in the election cycle." N.M. Stat. § 1-19-26(Q)(1)-(4). C4T alleges that Defendant "made a final determination that Cowboys for Trump, LLC[,] qualifies as a political committee." ECF 1 ¶ 3. The parties appear to agree that this determination was upheld in binding arbitration. ECF at 14 at ECF 1–2; ECF 23 at 6–7; *see generally* N.M. Stat. § 1-19-34.4(D) (providing that Defendant's determinations with respect to the application of the CRA may be disputed via "binding arbitration").

      (2) not a coordinated expenditure as defined in the Campaign Reporting Act; and
      (3) made to pay for an advertisement that:
          (a) expressly advocates for the election or defeat of a clearly identified candidate or the passage or defeat of a clearly identified ballot question;
          (b) is susceptible to no other reasonable interpretation than as an appeal to vote for or against a clearly identified candidate or ballot question; or
          (c) refers to a clearly identified candidate or ballot question and is published and disseminated to the relevant electorate in New Mexico within thirty days before the primary election or sixty days before the general election at which the candidate or ballot question is on the ballot.

N.M. Stat. § 1-19-26(N). Persons who make independent expenditures of *less* than $3,000 in "nonstatewide" elections or $9,000 in statewide elections must disclose the identity of (and amount contributed by) each donor who contributed more than $200 toward the independent expenditure. N.M. Stat. § 1-19-27.3(C). Persons who make independent expenditures of *more* than $3,000 in "nonstatewide" elections or $9,000 in statewide elections are subject to additional disclosure requirements. *See* N.M. Stat. § 1-19-27.3(D). Persons who make independent expenditures for advertisements in an amount greater than $1,000 must "ensure that the advertisement contains the name of the candidate, committee or other person who authorized and paid for the advertisement." N.M. Stat. § 1-19-26.4. Defendant publishes all of these disclosures online. ECF 1 ¶ 29; *Rio Grand Found. v. Oliver*, No. Civ. 1:19-cv-01174-JCH-JFR, 2020 WL 6063442, at *3 (D.N.M. Oct. 14, 2020); Secretary of State Independent Expenditure, https://portal.sos.state.nm.us/IESearch/ (last visited Dec. 15, 2020). Noncompliance is punishable by fine, one year in jail, or both. *See, e.g.*, N.M. Stat. §§ 1-19-34.6(B), 1-19-36(A).

      "C4T receives support from a variety of sources" to fund its general operations and pay for its "educational efforts." ECF 1 ¶¶ 31–32. Plaintiffs fear that the CRA's disclosure requirements could drive away donors, thereby reducing C4T's fundraising. *Id.* ¶¶ 34–35. At the same time, however, Plaintiffs maintain that they "have not and will not make independent expenditures." *Id.* ¶ 8; *see also id.* ¶ 13 ("Cowboys for Trump has not expended a single penny on independent

expenditures in support of or in opposition to any candidate for office, much less a state office.").[6] Nonetheless, Plaintiffs "bring this pre-enforcement challenge on behalf of themselves and their donors," challenging the CRA's disclosure regime as violating the First and Fourteenth Amendments as well as being preempted by the Federal Election Campaign Act. *Id.* ¶¶ 36, 39–46, 55–57 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)); *see generally* 52 U.S.C. § 30143(a) (stating that "the provisions of [the Federal Election Campaign Act], . . . supersede and preempt any provision of State law with respect to election to Federal office.").[7]

## II. ISSUE

The primary issue raised by the Motion before the Court is whether any of the plaintiffs has standing, in their own right, to contest the validity of the CRA. ECF 14 at 12–13; ECF 23 at 4–5; ECF 25 at 4–7. In addition and alternatively, the Court must determine whether C4T may assert the rights of its donors (i.e. has associational standing). ECF 14 at 11–12; ECF 23 at 2–4; ECF 25 at 2–3.

## III. DISCUSSION

### A. Parties' Arguments

Defendant contends that Plaintiffs do not have standing to challenge the CRA because they have not alleged that they have suffered an injury in fact. ECF 14 at 11. Alternatively, even if Plaintiffs have suffered an injury, Defendant insists that any such injury is not redressable in this case. *Id.* at 13. Defendant further argues that C4T cannot assert the rights of its donors because C4T only interacts with its donors via arm's-length transactions. *Id.* at 12; ECF 25 at 2–3.

---

[6] The Court notes that Plaintiffs do not allege that they support or oppose ballot questions either. Because the burden is on Plaintiffs to establish standing, they would need to have alleged that they do so in order to have standing on that basis. Accordingly, no part of Plaintiffs' complaint establishes that C4T's expenditures are covered or will be covered by the CRA. *See* N.M. Stat. §§ 1-19-26(N), 1-19-26.4, 1-19-27.3(C)-(D).

[7] Because the Court concludes that Plaintiffs have not established standing, the Court does not address the parties' merit-based preemption arguments.

For their part, Plaintiffs argue that they have established injury in fact because the CRA's reporting and disclosure requirements chill their ability to exercise their First Amendment rights. ECF 23 at 4–5. Plaintiffs contend that their injuries are redressable because a ruling on the merits would "forestall [Defendant's] overreach in forcing state registration and disclosure on Plaintiffs." *Id.* at 6. Last, C4T believes that it can assert the rights of its donors because "the First Amendment recognizes a right of associations to litigate on behalf of their members as a mechanism for petitioning the government for redress." ECF 23 at 3.

## B. Substantive Law

### 1. Standard of Review

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is reviewed using the standard of review applicable to a motion to dismiss under Rule 12(b)(6). *Soc'y of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1240–41 (10th Cir. 2005) (citing *Aspenwood Inv. Co. v. Martinez*, 355 F.3d 1256, 1259 (10th Cir. 2004)); *United Fire & Cas. Co. v. Caskey Drywall NM LLC*, Civ. No. 17-1108 KG/JHR, 2018 WL 3429921, at *2 (D.N.M. July 16, 2018) (citing *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992)). In reviewing a complaint under this standard, the Court must accept all well-pled factual allegations as true and construe those facts in the light most favorable to the non-moving party. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). But the Court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Importantly, the Court will only "consider facts alleged in the complaint itself" when evaluating its sufficiency. *Smallen v. W. Union Co.*, 950 F.3d 1297, 1305 (10th Cir. 2020) (citing *Emps.' Ret. Sys. of Rhode Island v. Williams Cos., Inc.*, 889 F.3d 1153, 1158 (10th Cir. 2018)). "Judgment on the pleadings should not be granted 'unless the moving party has clearly established that no material issue of fact remains to be resolved and the

party is entitled to judgment as a matter of law.'" *Park Univ. Enters., Inc. v. Am. Cas. Co. Of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006) (quoting *United States v. Any & all Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000)).

    2. <u>Standing</u>

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (citing U.S. Const., art. III, § 2). To satisfy Article III standing, "a plaintiff must show 'that (1) he or she has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision.'" *D.L.S. v. Utah*, 37 F.3d 971, 974 (10th Cir. 2004) (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997)). The party invoking federal jurisdiction bears the burden of establishing each of these elements; failure to do so is dispositive. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003).

This case primarily concerns the first element—injury in fact. This requirement "helps ensure that the [Plaintiffs] ha[ve] a 'personal stake in the outcome of the controversy.'" *Susan B. Anthony List*, 573 U.S. at 158. Such an injury must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). As is alleged here, "a chilling effect on the exercise of a plaintiff's First Amendment rights may amount to a judicially cognizable injury in fact, as long as it 'arise[s] from an objectively justified fear of real consequences.'" *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1088 (10th Cir. 2006) (quoting *D.L.S.*, 374 F.3d at 975). "However, even under the more lenient requirements for standing applicable to First Amendment overbreadth challenges, it still remains the law that plaintiffs must establish that they have suffered some *injury*

*in fact* as a result of the defendant's actions." *Bischoff v. Osceola County, Fla.*, 222 F.3d 874, 884 (11th Cir. 2000) (citing *Virginia v. Am. Booksellers Assoc. Inc.*, 484 U.S. 383, 392 (1988)) (emphasis in original).

The Tenth Circuit has held that there are two circumstances in the First Amendment context in which a plaintiff may bring a pre-enforcement challenge to a statute. "First, a plaintiff generally has standing if he or she alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder.'" *Ward*, 321 F.3d at 1267 (quoting *Phelps*, 122 F.3d at 1326). "Second, although allegations of a 'subjective' chill are not adequate, . . . a First Amendment plaintiff who faces a credible threat of future prosecution suffers from an 'ongoing injury resulting from the statute's *chilling effect* on his desire to exercise his First Amendment rights.'" *Id.* (quoting *Wilson v. Stocker*, 819 F.2d 943, 946 (10th Cir. 1987)) (emphasis in original) (internal citation omitted).

This case also implicates associational standing; that is, whether C4T may sue on behalf of its donors. ECF 23 at 2–4. "An association has such standing only if: '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 756 (10th Cir. 2010) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

### C. Plaintiffs Have Not Established Standing

#### 1. Plaintiffs have not alleged facts establishing injury in fact

Because Plaintiffs have failed to allege facts demonstrating that there is either a credible threat of enforcement of the CRA's disclosure provisions against them or that the CRA has a plausibly chilling effect on their First Amendment rights, the Court holds that Plaintiffs have failed to show that they have suffered an injury in fact. Accordingly, the Court concludes that Plaintiffs have not satisfied their burden of establishing that they have standing to challenge the CRA.

Illustrative of the circumstances under which a credible threat of prosecution or enforcement may constitute injury in fact is *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014). That case involved an Ohio statute prohibiting certain "false statements" made during a political campaign. *Id.* at 152 (citing Ohio Rev. Code § 3517.21(B) (2013)). Susan B. Anthony List ("SBA") was a pro-life advocacy organization that criticized politicians who voted for the Affordable Care Act ("ACA"), including then-Congressman Steve Driehaus. *Id.* at 153–54.[8] In response, Driehaus filed a complaint with the Ohio Elections Commission seeking enforcement of the false statement statute. *Id.* at 154. SBA then filed suit in federal court seeking injunctive relief contesting the validity of the statute under the First and Fourteenth Amendments. *Id.* at 154. After Driehaus lost the November 2010 election, he withdrew his complaint. *Id.* at 155.

Subsequently, SBA amended its complaint to allege that the Ohio statute was unconstitutional facially and as applied. *Id.* SBA alleged that its speech about Driehaus had been chilled and that it intended to engage in similar activity in the future. *Id.* Because (1) SBA alleged that it intended to continue making statements about candidates who voted for the ACA (i.e.

---

[8] Specifically, SBA issued a press release educating "voters that their representative voted for a health care bill that include[d] taxpayer-funded abortion," listing Driehaus. *Susan B. Anthony List*, 573 U.S. at 153–54. In addition, SBA planned to display a billboard reading "Shame on Steve Driehaus! Driehaus voted FOR taxpayer-funded abortion." *Id.* at 154.

engage in an activity that is arguably constitutionally protected); (2) the language of the statute arguably covered SBA's intended future speech; and (3) the threat of future enforcement was "substantial,"[9] the Supreme Court held that SBA alleged a credible threat of enforcement amounting to an injury in fact. *Id.* at 161–67.

In *Ward v. Utah*, 321 F.3d 1263 (10th Cir. 2003), the Tenth Circuit addressed the conditions under which a statute's chilling effect may suffice as an injury in fact. A "self-described animal-rights activist," Ward attended a candlelight vigil and participated in the symbolic burning of a mink stole to raise awareness of the mistreatment of animals in the fur industry, a protest for which he was later charged with disorderly conduct. *Id.* at 1265. Prosecutors later elevated the charge to a felony under a Utah hate-crimes statute. *Id.*[10] Both the felony enhancement and the underlying disorderly conduct charge, however, were eventually dropped. *Id.* Ward nonetheless sued the state of Utah seeking, in part, declaratory relief as to the constitutionality of the hate-crimes statute. *Id.* Importantly, Ward "present[ed] sworn . . . testimony that he would persist in the conduct that precipitated his past felony charge but for his fear of being charged with the same felony." *Id.* at 1269. Thus, the Tenth Circuit "conclude[d] that Ward face[d] a credible threat of future prosecution and suffer[ed] from an injury in the form of a 'chilling effect' on his desire to engage in First Amendment activities." *Id.*

---

[9] The Supreme Court reasoned that because the Ohio Election Commission was frequently asked to enforce the statute and because SBA had been a prior subject of such a complaint, the prospect of future enforcement was not "imaginary or speculative." *Susan B. Anthony List*, 573 U.S. at 164–67 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

[10] The disputed statute provided that certain misdemeanor charges (including disorderly conduct) could be elevated to a felony if the underlying offense was committed with the "intent to intimidate or terrorize another person with reason to believe that the action would intimidate or terrorize that person." *Ward*, 321 F.3d at 1265 (citing Utah Code § 76-3-203.3 (1992)).

The Complaint in the instant case is unlike either *Susan B. Anthony List* or *Ward*. Nor do its current allegations bring it remotely close to either one. Importantly, Plaintiffs allege that:

> Plaintiffs *have not and will not make independent expenditures* in support of candidates or ballot questions and they also have not and will not make financial contributions to candidates. Further, Cowboys for Trump's focus is on educating the public about the President of the United States and his policies. They have not and will not make financial contributions or independent expenditures in support of candidates for state, local, and city elections in the state in [sic] New Mexico.

ECF 1 ¶ 8 (emphasis added). Taken as true, the allegation that C4T has not and will not make "independent expenditures" is significant. Indeed, it is dispositive, for this allegation removes C4T entirely from the scope of actors whose conduct the CRA purports to govern. The disclosure requirements at issue *only* apply to those making "independent expenditures." N.M. Stat. §§ 1-19-26.4, 1-19-27.3 (C), (D).[11] Thus, unlike the plaintiff in *Susan B. Anthony*, Plaintiffs apparently do *not* intend to engage in activity that would trigger the CRA's disclosure provisions. Consequently, Plaintiffs have not alleged that there exists a credible threat of enforcement. Moreover, in contrast to the scenario in *Ward*, Plaintiffs do not allege that the CRA has stood in the way of them making independent expenditures. Put differently, the CRA has not plausibly chilled Plaintiffs' speech because Plaintiffs have not alleged that, but for the existence of the CRA, they would be making independent expenditures. Rather, Plaintiffs have affirmatively disclaimed any intent to do so.

In short, because Plaintiffs allege that they have not made – and do not intend to make – any independent expenditures, they perforce will not be subject to the disclosure requirements the CRA attaches to such expenditures. The facts alleged in the Complaint simply and plainly do not

---

[11] Section 1-19-26.4 also applies to persons who make a "campaign expenditure" or a "coordinated expenditure." A "campaign expenditure" is an expenditure that is "made by a campaign committee or by a candidate in support of the candidate's campaign in an election." N.M. Stat. § 1-19-26(F). A "coordinated expenditure" is an expenditure that is made by a person other than a candidate or campaign committee at the direction of either a candidate or a person connected to a candidate for the purpose of supporting or opposing the election of a candidate. N.M. Stat. § 1-19-26(I). The Court, however, notes that Plaintiffs do not allege that either of these definitions apply to them.

satisfy the injury in fact requirement of standing. *C.f. Nat'l Council for Improved Health v. Shalala*, 122 F.3d 878, 884–85 (10th Cir. 1997) (holding that plaintiffs who challenged regulations requiring information placed on dietary supplement labels to be approved by the Food and Drug Administration did not have standing because they "d[id] not advance a single claim they wish[ed] to make . . . which could be prohibited under the . . . regulations.").

> 2. Plaintiffs cannot assert the rights of C4T's donors because Plaintiffs have not shown that those donors have suffered an injury in fact

Likewise, Plaintiffs do not have associational standing to assert the rights of C4T's donors because those donors have not suffered an injury in fact either. Plaintiffs rely on a single case, *Nat'l Ass'n for Advancement of Colored People v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) [hereinafter "*NAACP*"], to support their position on this point. ECF 23 at 2–4. That case, however, is readily distinguishable from the alleged facts here.

*NAACP* involved an Alabama statute requiring foreign corporations to file a corporate charter with the Alabama Secretary of State. *NAACP*, 357 U.S. at 451. Because the NAACP did not comply with the statute, the Attorney General of Alabama sought a court order to oust it from the state. *Id.* at 452–53. To prepare for a hearing on the matter, Alabama moved for the production of many of the NAACP's records, including a list of the names and addresses of all Alabama NAACP members. *Id.* at 453. Granting the motion, the trial court ordered the production of the NAACP's membership lists and other documents. *Id.* The NAACP, however, did not produce its membership lists, which resulted in its being "adjudged in civil contempt and fined $10,000." *Id.* The trial court denied the NAACP's motion to modify or vacate the contempt order. *Id.* The Supreme Court granted certiorari after the Alabama Supreme Court twice denied the NAACP's petitions for certiorari to review the contempt judgment. *Id.* In addressing whether the NAACP had standing to assert a right personal to its members "to be protected from compelled disclosure

by [Alabama] of their affiliation with the [NAACP] as revealed by the membership lists," the Supreme Court concluded that the NAACP's "nexus with [its members] [wa]s sufficient to permit that it act as their representative." *Id.* at 459.

The critical difference between the case at bar and *NAACP* is that Plaintiffs have not alleged that the threat of disclosure is actual or imminent. In *NAACP*, the membership lists at issue were the subject of a court order compelling disclosure. Here, however, Plaintiffs have insisted that they do not engage and have no intention of *ever* engaging in the types of activities that will trigger disclosure under the CRA. ECF 1 ¶ 8. Consequently, C4T's donors have not suffered an injury in fact and are never expected to suffer any such injury. *See Shalala*, 122 F.3d at 884–85. And because C4T's donors have not suffered an injury in fact, Plaintiffs do not have standing to challenge the CRA under an associational standing theory. *See Hunt*, 432 U.S. at 343 (holding that an organization only has standing to bring suit on behalf of its members when its "members would otherwise have standing to sue in their own right"); *see also Save Our Snowplanes v. Salazar*, 333 F. App'x 355, 359–60 (10th Cir. 2009) (unpublished) (same).

## IV.   CONCLUSION

One of the hallmarks of the American experiment in governing itself is the right of her citizens to band together to speak on matters of political importance. Another hallmark is the ability of her citizens to turn to a federal court whenever the right to engage in political speech is believed to be unconstitutionally threatened, chilled, or impinged. But the refuge offered by the federal court is not a forum for the general airing of miscellaneous political grievances a citizen or group of citizens may wish to air about the regulatory efforts of a government actor. The key to the door at the federal courthouse requires a *concrete injury* that is redressable by the Court *in that case*. The allegations in the Complaint filed here stop well short of opening the Court's door.

In its discretion, the Court will permit Plaintiffs until January 15, 2021, to file an amended complaint that cures the errors that have nullified the original version. If Plaintiffs should instead elect not to do so, whether because of events that have transpired since the filing of this suit or otherwise, the Court will dismiss this lawsuit.

For the foregoing reasons, **IT IS ORDERED** that State Defendants' Motion is **GRANTED IN PART AND DENIED AS MOOT IN PART**.

**IT IS FURTHER ORDERED** that the Complaint [ECF 1] is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs shall have until January 15, 2021, to file an amended complaint if they wish to do so.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*